DONNA L. KROLL ET AL. *v.* KENNETH W. STEERE
(AC 19276)

Schaller, Spear and Pellegrino, Js.

Argued May 8—officially released October 10, 2000

*William C. Kroll*, for the appellant (named plaintiff)

*Ralph J. Monaco*, with whom, on the brief, was *Thomas J. Londregan*, for the appellee (defendant).

*Opinion*

SPEAR, J. The plaintiff Donna L. Kroll[1] appeals from the judgment of the trial court rendered after it granted the motion for summary judgment filed by the defendant, Kenneth W. Steere, the zoning enforcement officer of Groton Long Point Association, Inc., a municipal corporation. The plaintiff's amended complaint alleged that the defendant infringed on her right to free speech, and enforced a sign ordinance against her in a discriminatory and selective manner. The plaintiff raises ten claims in her brief, only three of which warrant review.[2]

---

[1] The other plaintiff in this action is William Stuart. Only Kroll has appealed. We therefore refer in this opinion to Kroll as the plaintiff.

[2] The plaintiff makes the following claims:

"1. Did the court err and abuse its discretion in finding there was no genuine issue as to any material fact based on the pleadings, affidavits and other proof before the court?

"2. Did the court err and abuse its discretion in finding that [General Statutes §] 8-2 with regard to 'the height, size and location of advertising signs and billboards' gave the Zoning Officer and the Zoning Board the power to regulate a sign/mural protesting a deer kill that was placed on her property?

"3. Did the court err and abuse its discretion in finding that the Plaintiff's (Appellant's) sign/mural was an advertising sign(s) and or billboard?

"4. Did the court err and abuse its discretion by permitting the Zoning Officer to define 'sign' when the Groton Long Point Association, Inc.'s, Zoning Regulations had no definition for the word 'sign?'

"5. Did the court err and abuse its discretion in finding that the Groton Long Point Zoning Regulation 3.20 as written bestowed power upon the Zoning Official to regulate a political protest on the Appellant's property in light of *Ladue* v. *Gilleo*, 512 U.S. 43, 48, 114 S. Ct. 2038, 129 L. Ed. 2d 36 (1994)?

"6. Did the court err and abuse it discretion in finding that the Plaintiff displayed a sign and not a mural in violation of 3.20 of the Groton Long Point Zoning Regulations?

She claims that the summary judgment was improper because (1) there is a question of material fact as to whether a "mural" she placed on her property was a sign that was subject to the size limitation of § 3.20[3]

"7. Did the court err and abuse its discretion in finding that 3.20 as written did not afford commercial speech greater protection than noncommercial speech as distinguished in *Ladue* v. *Gilleo*?

"8. Did the court err and abuse its discretion in finding that there was no proof before the court that the Plaintiff's rights under the 14th amendment to the United States constitution were violated by selective enforcement of 3.20 of the Zoning Regulations?

"9. Did the court err and abuse its discretion when it was aware at oral argument relative to the Motion for Summary Judgment on October 5, 1998, that the Plaintiff had been unable to take the deposition of the Defendant, and further ordered the Defendant's counsel to make a date available to take the Defendant's deposition and then failed and or refused to consider the testimony of the defendant (appellee) after the transcript became available?

"10. Did the court err and abuse its discretion in footnote #1 of its Memorandum of Decision dated December 18, 1998, when it refused to consider a letter to the Zoning Enforcement Officer as evidence marked as 'Exhibit #4 to plaintiff's Memorandum In Opposition To Summary Judgment' when the Court had two separate exhibits signed under oath by the Plaintiff and Defendant that were attached to the Defendant's Memorandum in Support of Motion For Summary Judgment that indicate the Plaintiff's Counsel sent Exhibit #4 to the Defendant, Kenneth Steere and Kenneth Steere acknowledging receipt of said letter (exhibit #4) in his affidavit?"

The plaintiff's first and fifth claims are set out as issues one and two in this opinion. Her eighth claim is issue three in this opinion. Her other claims will not be discussed for the following reasons.

The second, third and fourth claims were not raised in the trial court. We are not required to review claims that were not distinctly raised in the trial court. Practice Book § 60-5; see *Bell Atlantic Mobile, Inc.* v. *Dept. of Public Utility Control*, 253 Conn. 453, 485, 754 A.2d 128 (2000). As to the fourth claim, the plaintiff's brief is not altogether clear, but the complaint seems to be that the defendant made certain statements at his deposition that there were political signs in town that were larger than one square foot. The plaintiff points to nothing in her brief that shows that the defendant defined what a "sign" is or that the court took any such definition into account.

The plaintiff's sixth and tenth claims are subsumed in the discussion of issues one and three in this opinion. Issues seven and nine were not addressed by the court and, therefore, the record is inadequate to review them.

[3] Section 3.20 of the zoning regulations of Groton Long Point Association, Inc., provides: "[O]nly one sign of not over one (1) square foot in area may

of the zoning regulations, (2) the sign size limitation improperly infringed on her constitutional right of free speech and (3) the court improperly found that the allegations of her amended complaint regarding selective and discriminatory enforcement of the sign ordinance were inadequate. We affirm the judgment of the trial court as to the first two claims. We reverse the judgment of the trial court on the selective enforcement claim.

We glean the following facts and procedural history from the court's memorandum of decision and the record. The plaintiff owned certain residential property in Groton Long Point. On or about August 1, 1997, the plaintiff placed a twenty square foot piece of plywood against her garage. On the plywood was a painting of two deer with the words, "Who Asked the Deer?" At an earlier time, the officers and directors of Groton Long Point Association, Inc., had recommended the adoption of an ordinance that allowed deer hunting with bows and arrows and shotguns.

The defendant contacted the plaintiff and ordered her to "cease and desist" by removing the alleged mural because it violated § 3.20 of the zoning regulations of Groton Long Point Association, Inc. The plaintiff then commenced an action against the defendant, alleging a violation of 42 U.S.C. § 1983.[4] The plaintiff claimed

---

be displayed on any building in any district, except as provided in Sections 4.1.6 and 5.3.1 provided one (1) sign not over four (4) square feet in area may advertise for sale the land or buildings upon which it is displayed. Any such sign shall be removed not later than forty-eight (48) hours after closing of the advertised sale. During the construction of a building, similar signs may advertise the name of the architect, contractor, or material suppliers for such building. No illuminated sign shall be permitted in any district."

[4] Section 1983 of title 42 of the United States Code provides in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be

that the cease and desist order improperly infringed on her right to freedom of speech pursuant to the United States and Connecticut constitutions, and that the defendant improperly and in a discriminatory manner engaged in selective enforcement of the zoning regulations against her despite the presence of many other signs in Groton Long Point that violated the size limitations of § 3.20. The defendant moved for summary judgment, and the court granted the defendant's motion. This appeal followed.

We first state our standard of review in summary judgment matters. "The standards governing our review of a trial court's decision to grant a motion for summary judgment are well established. Practice Book § 384 [now § 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Internal quotation marks omitted.) *Miller* v. *United Technologies Corp.*, 233 Conn. 732, 744–45, 660 A.2d 810 (1995). "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." (Internal quotation marks omitted.) *Tarzia* v. *Great Atlantic & Pacific Tea Co.*, 52 Conn. App. 136, 145, 727 A.2d 219, cert. granted on other grounds, 248 Conn. 920, 734 A.2d 569 (1999).

"On appeal, [w]e must decide whether the trial court erred in determining that there was no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . *Avon Meadow Condominium Assn., Inc.* v. *Bank of Boston Connecticut*, 50 Conn. App. 688, 693, 719 A.2d 66, cert. denied, 247 Conn. 946, 723 A.2d 320 (1998). Because

liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ." 42 U.S.C. § 1983 (Sup. II 1996).

the trial court rendered judgment for the [defendant] as a matter of law, our review is plenary and we must decide whether [the trial court's] conclusions are legally and logically correct and find support in the facts that appear in the record. . . . *Gateway Co.* v. *DiNoia*, 232 Conn. 223, 229, 654 A.2d 342 (1995). On appeal, however, the burden is on the opposing party to demonstrate that the trial court's decision to grant the movant's summary judgment motion was clearly erroneous. *2830 Whitney Avenue Corp.* v. *Heritage Canal Development Associates, Inc.*, 33 Conn. App. 563, 567, 636 A.2d 1377 (1994). *Kramer* v. *Petisi*, 53 Conn. App. 62, 66–67, 728 A.2d 1097, cert. denied, 249 Conn. 919, 733 A.2d 229 (1999)." (Internal quotations marks omitted) *Tryon* v. *North Branford*, 58 Conn. App. 702, 706–707, 755 A.2d 317 (2000).

I

The plaintiff first claims that there is a question of material fact as to whether her "mural" was a sign that could be precluded by the size limitations of § 3.20 of Groton Long Point Association, Inc., zoning regulations. We disagree.

Our review of the pleadings, affidavits and other documents in the record convinces us that there was no dispute about any of the physical characteristics of the subject piece of plywood and what was painted on it. The court properly concluded that it was a question of law whether the object was a mural or a sign. The plaintiff claimed that it was a "mural," but offered nothing other than her assertion to that effect. The court relied on Webster's New World College Dictionary (3d Ed.), which defines a mural as "a picture, esp. a large one, painted directly on a wall or ceiling, or a large photograph, etc; attached directly to a wall." There is no dispute that the piece of plywood was only placed against the plaintiff's garage wall; it was not a part of

the wall. The plywood was movable, and the plaintiff in fact moved it to a different location. We cannot say that the court improperly rejected the plaintiff's claim that the piece of painted plywood was a mural.

Again, resorting to Webster's New World College Dictionary (3d Ed.), the court found that "sign" is defined as "[a] publicly displayed board, placard, etc. bearing information, advertising, a warning, etc." It is undisputed that the plaintiff wanted to convey the message that killing deer was wrong and that she was opposed to it. The word "sign" was not defined in the zoning regulations; therefore, it was proper for the court to adopt the ordinary meaning of the word. See *Schwartz* v. *Planning & Zoning Commission*, 208 Conn. 146, 153, 543 A.2d 1339 (1988). We conclude that the plaintiff's claim is without merit.

II

The plaintiff next claims that even if the plywood board is considered a sign, the size limitation improperly infringed on her constitutional right to freedom of speech. She claims in her brief that § 3.20 is "unconstitutional in violation of the first and fourteenth amendments to the United States constitution." We disagree.

The plaintiff briefs and relies on a single case, *Ladue* v. *Gilleo*, 512 U.S. 43, 114 S. Ct. 2038, 129 L. Ed. 2d 36 (1994). In *Gilleo*, an ordinance of the city of Ladue, a suburb of St. Louis, Missouri, banned, with ten exemptions, all residential signs. The plaintiff placed an eight and one-half inch by eleven inch sign in one of her windows stating: "For Peace in the Gulf." (Internal quotation marks omitted) Id., 46. Although the sign was within the one square foot size limitation of the city ordinance, it was not within one of the ten exemptions to Ladue's ban on residential signs.[5] Id., 46–47.

---

[5] "The full catalog of exceptions, each subject to special size limitations, is as follows: '[M]unicipal signs;' '[s]ubdivision and residence identification' signs; '[r]oad signs and driveway signs for danger, direction, or identifica-

The United States Supreme Court held that the ordinance impermissibly violated the plaintiff's first amendment right of free speech. Id., 58–59. The court stated: "It is common ground that governments may regulate the physical characteristics of signs . . . ." Id., 48. The problem in that case was that the city's regulation almost totally banned all residential signs in the interest of minimizing visual clutter and, therefore, its exemptions discriminated on the basis of the sign's content. Id., 55–56.

In contrast, § 3.20 makes no attempt to regulate the content of residential signs. The court correctly noted that "[t]he government has a significant interest in the regulation of signs in order to maintain the safety of vehicular traffic." The plaintiff concedes that her sign was designed to attract the attention of passing motorists. In *Gilleo*, the United States Supreme Court pointed out that "[u]nlike oral speech, signs take up space and may obstruct views, distract motorists, displace alternative uses for land, and pose other problems that legitimately call for regulation." *Ladue* v. *Gilleo*, supra, 512 U.S. 48. We conclude that the enforcement of § 3.20 of the zoning regulations did not infringe on the plaintiff's constitutional right to freedom of speech.

## III

The plaintiff finally claims that the court improperly rendered summary judgment for the defendant on her

---

tion'; '[h]ealth inspection signs'; '[s]igns for churches, religious institutions, and schools' (subject to regulations set forth in [the ordinance]; 'identification signs' for other not-for-profit organizations; signs 'identifying the location of public transportation stops'; '[g]round signs advertising the sale or rental of real property,' subject to the conditions, set forth in [the ordinance], that such signs may 'not be attached to any tree, fence or utility pole' and may contain only the fact of proposed sale or rental and the seller or agent's name and address or telephone number; '[c]ommercial signs in commercially zoned or industrial zoned districts,' subject to restrictions set out elsewhere in the ordinance; and signs that 'identif[y] safety hazards.' " *Ladue* v. *Gilleo*, supra, 512 U.S. 47 n.6.

claim that the defendant selectively enforced § 3.20 of the zoning regulations in a discriminatory fashion against her while allowing other signs to remain undisturbed. The court granted summary judgment as to this claim because "[t]his part of the [amended] complaint fails to plead facts which will provide the court with the identification of others similarly situated with which to compare the plaintiff's treatment and does not provide allegations as to the exact nature of the violations." As to this aspect of the summary judgment motion, the court treated it as a motion to strike and ruled that the allegations of the [amended] complaint were insufficient.[6] When assessing whether the allegations of a complaint are legally sufficient pursuant to a motion to strike, the court assumes that all well pleaded facts are true. We disagree with the court's legal conclusion that the plaintiff's allegations were insufficient to state a cause of action based on discriminatory, selective enforcement of § 3.20.

Because this issue is a question of law, our review is plenary. The plaintiff's amended complaint alleged that "there were countless readily visible violations of '3.20' in Groton Long Point, some having been there for months, but most having been there for years." She also alleged a specific violation by the vice president of Groton Long Point Association, Inc., who "put up three

[6] See *Haynes* v. *Yale-New Haven Hospital*, 243 Conn. 17, 32 n.17, 699 A.2d 964 (1997), in which our Supreme Court reviewed a motion for summary judgment as if it were a motion to strike testing the legal sufficiency of the allegations of a claim under the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., because the parties treated the matter in that fashion. Footnote 17 in *Haynes* states: "We review this issue, as the plaintiff and the defendants did in their arguments before this court, as if the motion for summary judgment were a motion to strike testing the legal sufficiency of the allegations of the CUTPA claim. Accordingly, we decide the issue raised by the parties as if the allegations of fact were true." We also note that the plaintiff has raised no claim that she should have been allowed to plead over after the trial court granted summary judgment on the ground that the allegations of her complaint were insufficient.

(3) signs all measuring 18 inches [by] 26 inches that supported political candidates [on a lot] next door to the plaintiff's home." Moreover, the plaintiff alleges that the defendant "never took *any* action against *any* of the homeowners in Groton Long Point for the myriad of violations on people's homes in Groton Long Point as well as real estate for sale signs that violated '3.20.' " (Emphasis added)

Contrary to the trial court, we conclude that the plaintiff's allegations are sufficient. The specific identification of those homeowners with signs that violated the size limitations of § 3.20 would be a matter of proof at trial. *Bianco* v. *Darien*, 157 Conn. 548, 254 A.2d 898 (1969), relied on by the court in its memorandum of decision, is not to the contrary. In *Bianco*, the plaintiffs claimed that by taking action against them and failing to enforce its zoning regulations against other violators, the defendant town violated the plaintiffs' right to equal protection under the law. Id., 559. Our Supreme Court stated that "[m]ere laxity in the administration of the law, no matter how long continued, is not and cannot be held to be a denial of the equal protection of the law. To establish arbitrary discrimination inimical to constitutional equality, there must be something more, something which in effect amounts to an intentional violation of the essential principle of practical uniformity." (Internal quotation marks omitted.) Id., 559–60. In *Bianco*, the trial court had a full trial on the plaintiffs' injunction action against the town of Darien. Id., 552. It was only after a full trial that the court found that the plaintiffs had not shown the nature or location of the other alleged violations on the street on which the plaintiffs' business was located. Id., 560. We conclude that the court in this case improperly granted summary judgment for the defendant on the plaintiff's claim of selective enforcement of § 3.20.

The judgment is reversed and the case is remanded with direction to deny the defendant's motion for summary judgment as it applies to the plaintiff's claim of selective enforcement of § 3.20 of the zoning regulations. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.