## SUSAN BARESE *v.* JAMES G. CLARK
## (AC 20036)

Lavery, C. J., and Landau and Mihalakos, Js.

Argued November 1, 2000—officially released February 27, 2001

*Norman A. Pattis,* for the appellant (plaintiff).

*Terrence M. O'Neill,* assistant attorney general, with whom, on the brief, was *Richard Blumenthal,* attorney general, for the appellee (defendant).

*Opinion*

LAVERY, C. J. The plaintiff, Susan Barese, appeals from the summary judgment rendered in favor of the defendant, James G. Clark. On appeal, the plaintiff claims that the trial court improperly concluded that the defendant, an assistant state's attorney, was

immune from a civil action that was based on his deal-ings with the plaintiff, who was a victim of a crime. Because we conclude that state's attorneys are immune from tort liability for acts committed in the performance of their duties as state's attorneys, we affirm the judg-ment of the trial court.

The following facts and procedural history are rele-vant to our consideration of the issue raised in this appeal.[1] In August, 1994, the plaintiff was the victim of an assault, robbery and burglary in her home. During the course of those crimes, the intruder bit the plaintiff, breaking her skin. The defendant successfully prose-cuted the assailant[2] for those and other crimes, resulting in a lengthy prison sentence. The day before the assail-ant's scheduled sentencing, the plaintiff and the defen-dant spoke by telephone. In that conversation, the defendant asked the plaintiff to meet him at his office the next morning prior to the sentencing hearing, and the plaintiff agreed to do so.

When the plaintiff arrived the next morning, the defendant informed her that the presentence investiga-tion (PSI)[3] report contained a statement by the assailant that he was HIV positive at the time of the incident. The defendant, however, informed the plaintiff that he did not believe the assailant's claim, but rather believed that the assailant said this only in an effort to obtain leniency in sentencing. The defendant also assured the plaintiff that he would not disclose this information.

[1] Because this case is before us on appeal from the granting of a motion for summary judgment, we adopt the facts articulated by the court in its memorandum of decision on the motion for summary judgment. The plaintiff has not claimed the existence of any dispute as to those facts as the basis for her appeal.

[2] Although the assailant was a defendant in the criminal matter, we refer to him as the "assailant" to avoid confusion with the defendant here.

[3] The PSI is a document that is made available to the sentencing judge for use in determining the appropriate sentence.

At the sentencing hearing, however, the defendant revealed to the sentencing court the assailant's claim that he was HIV positive. The defendant stated in deposition testimony for this case that he did so partially to reveal to the court that "there were two sides to [the assailant's] claim of having an illness."

Subsequently, the plaintiff filed a four count complaint against the defendant, alleging breach of the plaintiff's privacy, fraud and intentional infliction of emotional distress. The defendant filed a motion for summary judgment, claiming that because the conduct giving rise to this action was performed by him in his capacity as an assistant state's attorney, he was immune from civil liability for those actions. The court granted the defendant's motion as to all counts of the plaintiff's complaint. This appeal followed.

We first state our standard of review in summary judgment matters. "The standards governing our review of a trial court's decision to grant a motion for summary judgment are well established. Practice Book § 384 [now § 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . .

"On appeal, [w]e must decide whether the trial court erred in determining that there was no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . Because the trial court rendered judgment for the [defendant] as a matter of law, our review is plenary and we must decide whether [the trial court's] conclusions are legally and logically correct and find support in the facts that

appear in the record." (Citations omitted; internal quotation marks omitted.) *Kroll* v. *Steere*, 60 Conn. App. 376, 380–81, 759 A.2d 541, cert. denied, 255 Conn. 909, 763 A.2d 1035 (2000); see also *Miles* v. *Foley*, 253 Conn. 381, 385–86, 752 A.2d 503 (2000).

Our Supreme Court, the United States Supreme Court and the federal courts of appeal have long recognized the existence of, and the need for, prosecutorial immunity. Such immunity exists to allow prosecutors at the state and federal level to be free to perform their essential role in the judicial process without the possibility of civil liability hanging over their head as a sword of Damocles.[4]

The United States Supreme Court addressed the issue of a state prosecutor's amenability to suit under 42 U.S.C. § 1983[5] in *Imbler* v. *Pachtman*, 424 U.S. 409, 96 S. Ct. 984, 47 L. Ed. 2d 128 (1976). Although that case arose under 42 U.S.C. § 1983 and not under state common law, the court engaged in an extensive discussion concerning the existence of common-law immunities for prosecutors, the question at issue here. The court did so because it previously had held in *Tenney* v. *Brandhove*, 341 U.S. 367, 71 S. Ct. 783, 95 L. Ed. 1019 (1951), that "immunities well grounded in history and reason had not been abrogated by covert inclusion in the general language of § 1983." (Internal quotation marks omitted.) *Imbler* v. *Pachtman*, supra, 418, quoting *Tenney* v. *Brandhove*, supra, 376. As the court in *Imbler* stated: "The decision in *Tenney* established that § 1983

---

[4] The "sword of Damocles" refers generally to impending disaster.

[5] Section 1983 of title 42 of the United States Code provides in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . ."

is to be read in harmony with general principles of tort immunities and defenses rather than in derogation of them." *Imbler* v. *Pachtman,* supra, 418.

"The common-law immunity of a prosecutor is based upon the same considerations that underlie the common-law immunities of judges and grand jurors acting within the scope of their duties. These include concern that harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust." Id., 422–23.

To allow a prosecutor to be subject to suit for actions performed as an integral part of the judicial process "would open the way for unlimited harassment and embarrassment of the most conscientious officials by those who would profit thereby. There would be involved in every case the possible consequences of a failure to obtain a conviction. There would always be a question of possible civil action in case the prosecutor saw fit to move dismissal of the case. . . . The apprehension of such consequences would tend toward great uneasiness and toward weakening the fearless and impartial policy which should characterize the administration of this office. The work of the prosecutor would thus be impeded and we would have moved away from the desired objective of stricter and fairer law enforcement." *Pearson* v. *Reed,* 6 Cal. App. 2d 277, 287, 44 P.2d 592 (1935).

Because the court stated in *Imbler* that the immunity of prosecutors derived from that of judges, some discussion about the contours of the latter type of immunity is necessary. The court explained this immunity, as well as its connection with that of prosecutors. "The immunity of a judge for acts within his jurisdiction has roots extending to the earliest days of the common law.

See *Floyd* v. *Barker*, 12 Coke 23, 77 Eng. Rep. 1305 (1608). Chancellor Kent traced some of its history in *Yates* v. *Landing*, 5 Johns. 282 (N.Y. 1810), and this Court first accepted the rule of judicial immunity in *Bradley* v. *Fisher*, [80 U.S.] (13 Wall.) 335, [20 L. Ed. 646] (1871). . . . Courts that have extended the same immunity to the prosecutor have sometimes remarked on the fact that all three officials—judge, grand juror, and prosecutor—exercise a discretionary judgment on the basis of evidence presented to them. *Smith* v. *Parman*, [101 Kan. 115, 165 P. 663 (1917)]; *Watts* v. *Gerking*, [111 Ore. 641, 228 P. 135 (1924)]. It is the functional comparability of their judgments to those of the judge that has resulted in . . . prosecutors being referred to as 'quasi-judicial' officers, and their immunities being termed 'quasi-judicial' as well." (Citations omitted.) *Imbler* v. *Pachtman*, supra, 424 U.S. 423 n.20. The court concluded its discussion by stating: "The common-law rule of immunity is thus well settled." Id., 424.

Addressing a claim similar to the one pressed here, namely, that the immunity enjoyed by a prosecutor is not absolute, but instead is qualified, the court in *Imbler* explained: "If a prosecutor had only a qualified immunity, the threat of § 1983 suits would undermine performance of his duties no less than would the threat of common-law suits for malicious prosecution. A prosecutor is duty bound to exercise his best judgment both in deciding which suits to bring and in conducting them in court. The public trust of the prosecutor's office would suffer if he were constrained in making every decision by the consequences in terms of his own personal liability in a suit for damages. Such suits could be expected with some frequency, for a defendant often will transform his resentment at being prosecuted into the ascription of improper and malicious actions to the State's advocate. . . . Further, if the prosecutor could be made to answer in court each time such a person

charged him with wrongdoing, his energy and attention would be diverted from the pressing duty of enforcing the criminal law." (Citations omitted.) Id., 424–25.

The court concluded: "[T]he considerations outlined above dictate the same absolute immunity under § 1983 that the prosecutor enjoys at common law. To be sure, this immunity does leave the genuinely wronged defendant without civil redress against a prosecutor [who acts] malicious[ly] or dishonest[ly] . . . . But the alternative of qualifying a prosecutor's immunity would disserve the broader public interest. It would prevent the vigorous and fearless performance of the prosecutor's duty that is essential to the proper functioning of the criminal justice system. Moreover, it often would prejudice defendants in criminal cases by skewing *post-conviction judicial decisions* that should be made with the sole purpose of insuring justice." (Emphasis added.) Id., 427–28. The court also noted: "[W]e find ourselves in agreement with Judge Learned Hand, who wrote of the prosecutor's immunity from actions for malicious prosecution: 'As is so often the case, the answer must be found in a balance between the evils inevitable in either alternative. . . . [I]t has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation.' *Gregoire* v. *Biddle*, 177 F.2d 579, 581 ([2d Cir.] 1949), cert. denied, 339 U.S. 949 [70 S. Ct. 803, 94 L. Ed. 1363] (1950)." *Imbler* v. *Pachtman*, supra, 424 U.S. 428. The court concluded that "in initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages . . . ." Id., 431.

In the years following the Supreme Court's decision in *Imbler*, which set forth the contours of prosecutorial immunity, the United States Supreme Court has had occasion to fill in the outline set forth in *Imbler*. Summarizing *Imbler* a decade and one-half later, the United

States Supreme Court stated: "[P]rosecutors are absolutely immune from liability . . . for their conduct in initiating a prosecution and in presenting the State's case . . . insofar as that conduct is intimately associated with the judicial phase of the criminal process . . . . It was recognized . . . that the duties of the prosecutor in his role as advocate for the State involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom." (Citations omitted; internal quotation marks omitted.) *Burns* v. *Reed*, 500 U.S. 478, 486, 111 S. Ct. 1934, 114 L. Ed. 2d 547 (1991).

Our Supreme Court has relied on these and other United States Supreme Court cases, as well as cases from federal courts of appeal, as providing support for the existence of prosecutorial immunity from civil actions in state court. "It is in part due to the recognition that prosecutors are an integral part of the judicial system that courts have granted absolute immunity from civil actions to prosecutors. *Malley* v. *Briggs*, 475 U.S. 335, 342, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986); *Imbler* v. *Pachtman*, [supra, 424 U.S. 420]. 'Prosecutorial immunity derives from the immunity attached to judicial proceedings.' *DeLaurentis* v. *New Haven*, 220 Conn. 225, 241, 597 A.2d 807 (1991). Such immunity covers acts that were performed by a prosecutor as an integral part of the judicial process." *Massameno* v. *Statewide Grievance Committee*, 234 Conn. 539, 567–68, 663 A.2d 317 (1995).

Having set forth the parameters of prosecutorial immunity, we now address the plaintiff's claim on appeal. The plaintiff claims that this court should conclude that the immunity enjoyed by prosecutors does not extend to the actions of the assistant state's attorney in this case. The plaintiff points specifically to the fact that the acts she complains of, namely, the defendant's meeting with the plaintiff prior to the sentencing hearing and then his statements to the court in the sentenc-

ing hearing, were not part of the defendant's role as an assistant state's attorney, but were "surplusage to the prosecutor's role as an advocate."

As stated earlier, the United States Supreme Court, in *Burns* v. *Reed,* supra, 500 U.S. 486, quoting *Imbler* v. *Pachtman,* supra, 424 U.S. 430, stated: "[P]rosecutors are . . . immune from liability . . . for their conduct . . . insofar as that conduct is intimately associated with the judicial phase of the criminal process . . . ." (Citations omitted; internal quotation marks omitted.)

One cannot seriously question that the sentencing hearing is part of "the judicial phase of the criminal process." Several of our rules of procedure amply demonstrate this fact. These rules provide that the right to appeal from the trial court's judgment of conviction accrues only upon sentencing. "[I]t shall be the duty of the clerk of the court, immediately after the *pronouncement of the sentence* . . . to advise the defendant in writing of such rights as such defendant may have to an appeal . . . ." (Emphasis added.) Practice Book § 43-30. "In criminal cases where the appeal is from a judgment of conviction, the appeal period shall begin when sentence is pronounced in open court. . . ." Practice Book § 63-1 (b). It follows that the sentencing hearing, a proceeding preliminary to the imposition of sentence, is part of the judicial phase of the criminal process. Accordingly, the cloak of prosecutorial immunity protects the defendant's actions in that hearing.

In addition, the PSI report containing the assailant's claim that he was HIV positive is itself part of the judicial process. Practice Book §§ 43-3 through 43-10 specifically address the preparation and use of a PSI report in the sentencing process. Practice Book § 43-3 (a) provides in relevant part that "the judicial authority *shall* order a presentence investigation . . . ." (Emphasis

added.) Practice Book § 43-7 provides in relevant part that the "report . . . shall be provided to the judicial authority." Practice Book § 43-9 provides in relevant part that the report "shall be available . . . for use in the sentencing hearing." Practice Book § 43-10 (1) provides in relevant part that the court "shall afford the parties an opportunity to . . . explain or controvert the presentence investigation report . . . or any other document *relied upon by the judicial authority* in imposing sentence. . . ." (Emphasis added.) This provision envisions that the court will rely on the PSI report in determining the sentence to impose. The defendant's actions at the sentencing hearing, in which he undertook to explain the PSI report relied on by the *judicial* authority, are, therefore, an integral part of the *judicial* process.

Because the hearing at which the defendant made the statements that are at the root of the plaintiff's claim was "intimately associated with the judicial phase of the criminal process"; (internal quotation marks omitted) *Burns* v. *Reed,* supra, 500 U.S. 486; we conclude that the mantle of prosecutorial immunity protected the defendant throughout that hearing. We thus conclude that the court properly found that "there is no genuine issue of material fact as to [the defendant's] role in this matter and [that] he did not abandon his prosecutor's role by addressing the criminal defendant's HIV claim at the sentencing hearing . . . ." Accordingly, the court properly rendered summary judgment in the defendant's favor.

The judgment is affirmed.

In this opinion the other judges concurred.