[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO STRIKE CASE FROM JURY DOCKET
In this case, the defendant has moved to strike the case from the jury docket on the basis that the plaintiff failed to claim the matter to the jury docket within ten days of joining of the issues in the case. The defendant refers to § 52-215 of the General Statutes which in relevant part reads that "when . . . an issue of fact is joined, the case may, within ten days after such issue of fact is joined, be entered in the docket as a jury case upon the request of either party . . ." The defendant argues that the original complaint was filed January 13, 1998, an answer and special defense was filed June 12, 1998, and the matter was not claimed to the jury list until January 7, 2001 — obviously, beyond the ten-day statutory requirement of § 52-215. However, the plaintiff points to the full procedural history of the case. The plaintiff originally brought suit on first amendment and selective enforcement claims. The trial court granted a motion for summary judgment as to both claims and there was an appeal. The Appellate Court affirmed the plaintiff's appeal as to selective enforcement and remanded the case to the trial court.
At that point, the plaintiff on January 2, 2001 filed a request for leave to amend the complaint to which no objection was made. The plaintiff claims the amended complaint alleges "completely new facts" thus entitling her to claim the case to the jury.
The question presented is under what circumstances will an amendment of a complaint allow a claim for a jury trial after such a claim was not originally made within the time perimeters of § 52-215.
The court will discuss the cases that have a bearing on that problem. In Atta v. Cutner, 95 Conn. 577 (1920), the parties proceeded to trial before the court, no claim for jury trial apparently having been made. During the trial, the plaintiffs (landlords) received permission to amend the complaint which was merely a change of date and the trial was interrupted so that the defendant (tenant) could file an amended answer. Along with the answer, the defendant filed a motion for a jury trial which the trial court denied. The Supreme Court upheld the trial court ruling that amendment did not reopen the right to submit the case to a jury. The court said "[the defendant tenant] knew as much before the amendment was allowed as after its disclosure, both of the landlords' claim and of the facts upon which he must rely to combat it," id. p. 578.
Leahey v. Heasley, 127 Conn. 332 (1940), was a negligence action. The record disclosed that an issue of fact was joined and the pleadings were closed, temporarily, on October 6. The plaintiff moved for permission to amend the complaint on November 9 and this motion was granted December CT Page 10256 22. The court noted the amendment "added a new and specific claim of negligence," id. p. 333. The defendant filed an amended answer December 27 and within ten days of the latter date, on January 5, pursuant to the plaintiff's claim, the case was placed on the jury list.
The trial court granted the motion to strike the case from the jury list on the grounds the plaintiff had waived her right to a jury trial under the statute by permitting more than ten days to elapse after an issue of fact had been joined. The trial court evidently concluded the issue of fact as having been joined on October 6 before the amendment. The Supreme Court reversed holding that the jury claim was properly made within ten days after an issue of fact was joined.
In Masto v. Board of Education, 200 Conn. 482 (1986), the trial court struck a case from the jury list and was upheld. The court noted that the pleadings were closed and on December 17, 1982, the plaintiff filed his claim for a trial to the court. Almost two years later, one defendant was allowed, over objection, to amend its answer and the plaintiff filed its reply while at the same time claiming a jury trial. The Supreme Court said: "We have compared the amended answer with the original and conclude that it merely restates in different words the very facts which already have been alleged." The court upheld the trial court's action and held that under these circumstances the ten-day period for claiming the case to the jury had not been reopened and it could only be so concluded "if the amended answer had introduced a new issue of fact into the case," id. p. 488, cf. Home Oil Co. v. Todd, 195 Conn. 333, 339-340 (1985).
The case of Flint v. National RR Passenger Corp. in the Appellate Court, 37 Conn. App. 162 (1995), and at the Supreme Court level,238 Conn. 282 (1996), which affirmed the ruling of the Appellate Court is instructive. In Flint the plaintiff brought an action pursuant to the Federal Employers Liability Act; he claimed he was injured while operating a jack at his employer's direction and that the employer was negligent. When the pleadings were closed neither side requested a jury trial. The case was referred for court trial but a mistrial was declared. After the mistrial, the plaintiff filed a request to amend his complaint and a request for a jury trial. The requests were objected to by the defendant and the trial court granted the request to amend but denied the request for a jury trial. The case was tried to a defendant's verdict and the plaintiff appealed claiming he was denied his right to a jury trial.
The Appellate Court said "the dispositive issue [was] whether the plaintiff's request for a jury trial was timely by virtue of having enlarged the existing issues or having raised new issues of fact in his amended complaint." Section 52-215 provides that "when . . . an issue of CT Page 10257 fact is joined, the case may, within ten days after such issue of fact is joined, be entered in the docket as a jury case upon the request of either party." The court cited Leahey v. Heasley, 127 Conn. 332, 335
(1940), for the proposition that "when an amended complaint raises a new issue of fact, a new ten-day period arises within which to claim the matter to the jury," 37 Conn. App. at pp. 164-165.
The court then compared the original complaint to the amended complaint.
The original complaint in paragraph 7 said the plaintiff's injuries were caused by the defendant's negligence and paragraph 8 set forth the injuries. In the amended complaint, the "new allegation of negligence" was that "the operation of the jacks "in unison' was particularly dangerous and the new paragraph 8 attempted to enlarge the allegations of injuries. At page 168, the court upheld the trial court by stating:
 "The allegations of the original complaint were broad enough to have permitted the plaintiff to offer proof of the "in unison' theory. In fact, at the first trial proof was offered on the issue by the plaintiff's expert witness who testified to the difficulty of operating all three jacks together, a process that he believed would require split second timing. Furthermore, the amendments to the complaint concerning the plaintiff's injuries did not enlarge any existing issues or add any new issues to the case, but merely restated, albeit with more specificity, the plaintiff's original claims of injury."
The Supreme Court affirmed the Appellate Court, 238 Conn. 282 (1996), particularly referring to that court's pointing out that the allegations of the original complaint were broad enough to have offered proof of what the Supreme Court characterized as "the additional theory in the amended complaint," id. 238 Conn. at p. 284.
The test adopted by the court ensures the fair enforcement of §52-215. If matters in the amended complaint could have been introduced under the first complaint, the mere filing of an amended complaint with differently phrased verbiage cannot renew a party's right to claim a jury trial — any other view would make the waiver provisions for a jury trial claim meaningless. It would also lead to docket shopping.
As the appellate courts indicate, it is necessary in a case like this to compare the pleadings in question — here, the original complaint dated January 6, 1998 and the amended complaint dated December 31, 2000. CT Page 10258 The plaintiff claims that paragraphs 15, 16, 22 and 23 "add significant additional facts and allegations concerning a general pattern of selective enforcement of other zoning regulations," and that "paragraph 20 of the amended complaint alleges a completely new issue, one of law, namely 3.20 of the (local) zoning regulations is in violation of Connecticut General Statutes § 8-2" (plaintiff's February 24, 2001 brief). As the Flint courts indicate, the question here cannot be determined by abstract definitions of what is truly "additional" or new — the test is rather whether what is claimed to be additional or new allegations in the amended complaint could have been introduced at trial under the prior complaint — as if no amended complaint had been filed.
Here, it should be kept in mind that the first January, 1998 complaint and the amended complaint both raise a claim of selective and discriminatory enforcement of the local zoning regulation, § 3.20.
The first complaint, like the amended complaint, alleges in the first few paragraphs that the officers and directors of the Groton Long Point Association, Inc. recommended the adoption of an ordinance permitting a deer hunt; it was adopted and, in protest, the plaintiff placed what she characterizes as a mural on her property protesting the hunt. The defendant is the zoning officer of the association and, pursuant to § 3.20 of the zoning ordinance of the Groton Long Point Zoning Regulations, he directed the plaintiff to remove the "mural" which he claimed was in violation of the ordinance which states that no one may maintain a "sign over one square foot in area on any building in any district except as provided" in other regulations which have no bearing on this case.
Paragraph 12 of the first complaint alleged that the defendant was in favor of killing the deer. Paragraph 13 alleged that at the same time the plaintiff displayed the mural, there were countless readily visible violations of `3.20 in Groton Long Point, some having been there for months but, most having been there for years." Paragraph 14 goes on to say "the defendant never took any action against any of the homeowners in Groton Long Point for the myriad of violations on people's homes in Groton Long Point as well as real estate for sale signs that violated `3.20.'" Paragraph 15 goes on to allege that the defendant even permitted the vice president of the association to put up signs violative of 3.20 that supported political candidates and this individual's lot is next to the plaintiff's home. Paragraph 19 asserts that the defendant's actions "constituted selective enforcement of `3.20' all to the legal detriment of the plaintiff.
The court will now discuss the amended complaint and particularly the CT Page 10259 paragraphs cited by the plaintiff which she claims added new facts and/or issues to the case — the question is could these matters have been introduced under the first complaint.
 (a.)
There are two constructions that can be given to the amended complaint which would allow the jury claim here.
Paragraph 15 of the amended complaint alleges that prior to issuing the cease and desist order to the plaintiff, the defendant had "NEVER (sic) issued any cease and desist orders as to 3.20 of the regulations." This paragraph adds nothing new to the allegations of the first complaint. As noted, paragraph 14 of that complaint similarly alleges that the defendant had never taken any action in Groton Long Point for myriad violations of 3.20, which paragraph 13 notes had been there for months, nay for years.
Paragraphs 16 and 23 of the amended complaint should be read together.
 "16. Prior to and after the cease and desist order the defendant routinely and regularly ignored zoning violations namely a garage at 1 East Shore Ave., a home at 1000 Groton Long Point Rd. and many fences that violated the zoning regulations."
 "23. The actions of the defendant constituted selective enforcement not only as to 3.20 but selective enforcement of zoning regulations as they applied to 1 East Shore Ave. and 1000 Groton Long Point."
The plaintiff, through these two paragraphs, clearly alleges that both before and after the defendant issued his orders against the plaintiff under 3.20, he ignored violations of other zoning regulations. Could evidence of the latter be introduced in an attempt to show selective enforcement of 3.20 against the plaintiff? Reasons for saying that it could be lie in paragraphs 3, 12, 19 and 22 of the amended complaint. Paragraph 3 alleges the defendant recommended the deer hunt, and paragraph 12 says that he "was in favor of killing the deer." Paragraph 19 states the defendant's actions "were deliberate and intentional as to his failure to enforce 3.20 of the regulations as well as other zoning violations mentioned herein. . . . The actions of the defendant were in retaliation for the plaintiff seeking injunctive relief' as to the deer hunt which the defendant "supported and approved." CT Page 10260
Paragraph 22 states the defendant's actions "were deliberate, with malice, in bad faith and meant to intimidate and harass her because she expressed a view contrary to his own." To show what the plaintiff claims is personal animus against her which led to selective enforcement, the court cannot say at any trial of this matter the defendant's failure to enforce other zoning violations that he knew of, besides purported 3.20 violations, is not some evidence of personal animus against the plaintiff.
This factual allegation was nowhere raised in the first complaint. Paragraphs 13 through 15 of that complaint make general allegations of selective enforcement based only upon 3.20 violations of others that were not addressed by the defendant. Thus, the amended complaint raises new issues of fact which could not have come in under the first complaint and this should reopen the plaintiff's right to move for a jury trial.
 (b.)
Paragraph 20 of the amended complaint presents a closer question. There, it is alleged that § 8-2 of the General Statutes permits a zoning commission to regulate the "size, height and location ofadvertising signs and billboards," (emphasis added). The paragraph goes on to allege that the "mural" involved in this case "was clearly not an advertising sign or billboard" and that the defendant had no authority to issue his cease and desist order unless the mural was involved with "advertising." The paragraph ends with an allegation that "the defendant knew it was not an advertising sign or billboard." The plaintiff relies on Capalbo v. Planning Zoning Board, 208 Conn. 480, 491 (1988), for her narrow reading of § 8-2, which, in effect, provides state authorization for a local ordinance like 3.20.
The question is whether such an allegation, not having been made in the first complaint specifically could have been introduced under the first complaint's allegation that the defendant's actions constituted "selective enforcement" of 3.20 of the local ordinance. If selective enforcement is regarded as an equal protection claim as the court did in this case on appeal, Kroll v. Steere, 60 Conn. App. 376, 385 (2000), thenBianco v. Darien, 157 Conn. 548 (1969) becomes relevant where the court said: "To establish arbitrary discrimination inimical to constitutional equality, there must be something more, something which in effect amounts to an intentional violation of the principle of practical uniformity," id. p. 385.
Even if one assumes that merely alleging "selective enforcement" imports Bianco type allegations into the first complaint, it would be quite a stretch to go beyond that even and say that such broadly implied CT Page 10261 language would have permitted the plaintiff under the first complaint to introduce not only evidence that 3.20 is not authorized by § 8-2, butalso that the defendant knew it was not so authorized.
The court will therefore deny the defendant's motion to strike this matter from the jury list.
Corradino, J.