[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
On August 1, 1997, the plaintiff placed a sign or mural on her property protesting a deer hunt that was about to occur near the area where she resided; it was 20 square feet in size. The defendant, as Zoning Officer, issued a cease and desist order because the size of the sign violated Ordinance 3.20 of the Groton Long Point Zoning Regulations. The plaintiff appealed the order to the Zoning Board of Appeals, and the board denied the appeal. On November 13, 1997, the plaintiff brought suit in this court against the board from the denial of her appeal. The zoning appeal was dismissed on March 19, 1999. On December 18, 1997, the plaintiff brought the present action against the defendant under42 U.S.C. § 1983 claiming a violation of her First Amendment rights CT Page 5543 and claiming, in effect, a violation of her right to equal protection in that the zoning officer selectively enforced § 3.20 of the local ordinance. A motion for summary judgment was filed by the defendant and another trial judge granted it as to all counts. This was appealed and the Appellate Court affirmed the trial court's ruling on all matters except the selective prosecution claim which it remanded to the trial court. The plaintiff has been deposed and now the defendant moves for summary judgment on the remaining claim of selective enforcement.
The standards to be applied on a motion for summary judgment are well known. The court cannot decide a disputed issue of fact because that would deprive a person of his or her constitutional right to a jury trial. On the other hand, if a suit lacks merit and is not legally viable, such a motion should be granted to avoid unnecessary expense, anxiety and waste of time to litigants.
The defendant makes three basic claims in support of his motion for summary judgment. He argues that:
 (1) The plaintiff has sustained no damages upon which the case can be based since the defendant never enforced the cease and desist order.
 (2) The plaintiff has failed to present any facts that the defendant consciously practiced a pattern of discrimination as compared to others similarly situated.
 (3) The plaintiff failed to prove that the defendant's actions were based upon impermissible considerations.
 1.
The defendant argues that "at the heart of a selective enforcement claim is the concept of enforcement, leading to a claim for damages."Delevieleuse v. Manson, 184 Conn. 434, 436 (1981), is cited for the proposition that an actual controversy is a necessary basis for jurisdiction, courts cannot decide moot questions. Here, the defendant notes that the sign remained in front of the plaintiffs house from August, 1997 to the early winter, when she removed it, thus "there was never any enforcement of the cease and desist order issued by the Zoning Officer. . . ." The plaintiff sustained no physical injuries as a result of the order and her free speech rights were not violated, the defendant argues, because she said at her deposition that she took down the sign due to the weather. In response to this motion, the plaintiff submitted an affidavit in which she said she took the sign down because the deer CT Page 5544 hunt ended December 15, 1997. On this question, the plaintiff has also presented an August 26, 1997 letter from the defendant which is entitled "Cease and Desist Order." The letter contained the following remarks:
 "Your attention is directed to Connecticut General Statutes Section 8-12 which provides in part that a person convicted of wilful violation of the Zoning Regulations will be fined not less than $100.00 for each day the violation continues."
The plaintiff was also notified of her right to appeal the order to the Zoning Board of Appeals and told "failure to comply or appeal the Cease and Desist Order will result in further legal action." As noted, the plaintiff, in fact, did appeal the order to the Zoning Board and then appealed its denial to Superior Court.
In Farrar v. Hobby, 506 U.S. 503 (1992), the Supreme Court held that "the basic purpose of a § 1983 damage award should be to compensate persons for injuries caused by the deprivation of constitutional rights. . . . For this reason, no compensatory damages may be awarded in a § 1983 suit absent proof of actual injury. . . . We have also held, however, that the `denial of procedural due process should be actionable for nominal damages without proof of actual injury'. . . . The awarding of nominal damages for the `absolute' right to procedural due process `recognizes the importance to organized society that (this) right be scrupulously observed while remaining true to the principle that substantial damages should be awarded only to compensate actual injury. . . . Thus, Carey v. Piphus, 435 U.S. 247 (1978), obligates a court to award nominal damages when a plaintiff establishes the violation of his (her) right to procedural due process but cannot prove actual injury," id. p. 512; also see Caban-Wheeler v. Elsea,71 F.3d 837, 841 (CA. 11, 1996). Also see a case like Bell v.Gayle, 384 F. Sup. 1022 (N.D. Texas, 1974), where a § 1983 violation in favor of policemen was found because they were fired without a hearing. The court concluded they were entitled to nominal damages even though they earned more money in new jobs than as policemen and even though court found that even if a due process hearing had been held the city council would have had reasonable grounds to have fired them. The court said that . . . "a citizen's constitutional rights are of such a value that nominal damages are presumed to flow from the deprivation of such rights," id. p. 1026.
It is no doubt true that a plaintiff can bring an equal protection claim under § 1983 based on a theory of selective enforcement, Homanv. City of Reading, 963 F. Sup. 485, 489 (E.D. Pa., 1997), cf. Zahra v.Town of Southhold, 48 F.3d 674, 682 (CA 2, 1995). If a plaintiff were to CT Page 5545 establish a selective enforcement claim under the circumstances of a case like this, as an abstract or general proposition, the court finds it difficult to distinguish § 1983 procedural due process claims and their recognition of the right to nominal damages from a selective enforcement equal protection claim. A town official issues an order against a citizen which if violated can lead to substantial fines; while the order is outstanding, despite the fact that it was not acted upon, the citizen avails herself of the right to appeal the order which necessarily entails the expenditure of time and expense. This is enough to establish the existence of a real controversy between the citizen and town authorities. Because the citizen took the sign down at her own volition several months after the order does not mean that prior to that date she was not affected in ways other people were not who were or had been in the past committing a similar violation as it was claimed she was but were not subject to such orders. The question should be in an equal protection case, was the government action or order of such a nature as to permit a reasonable citizen to believe that he or she should respond to that order by taking appropriate legal action, such as an appeal or application for injunctive relief. If that is the case, nominal damages should certainly be considered as a remedy even if the authorities ultimately never takes steps to enforce their action or order or the citizen at some later point acted in such a way as to remove the need to take enforcement action. If selective enforcement in the very issuance of the order is established, such a remedy has to be allowed giving rise to other damage remedies under § 1983 otherwise the very issuance of such discriminatory orders by government officials or regulatory agencies could be a very efficient tool of harassment against vulnerable classes or unpopular citizens and § 1983 would not serve as a vehicle to avoid such activity in the future.
This is not to say, in fact, that this case will ultimately establish that selective enforcement occurred here by the mere issuance of the order. The court is just saying that as a general principle nominal damages should not be excluded as a legally acceptable possibility under § 1983 if selective enforcement is established as a reason why the order was issued in the first place.
 2.
The court will now attempt to address the summary judgment motion as it more directly concerns the merits of the claim made by the defendant.
When a plaintiff claims a violation of his equal protection rights because of the selective enforcement of a law or ordinance, the Second Circuit has set up a two-part test to determine whether the violation has been proven. LeClair v. Saunders, 627 F.2d 606, 609-610 (CA. 2, 1980). CT Page 5546 Our court in Schnabel v. Tyler, 230 Conn. 735, 762 (1994), adopted that test which requires proof that:
 (1) the person making the complaint, compared with others similarly situated, was selectively treated; and
 (2) that such selective treatment was based upon impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.
In addition to citing this law, the defendant in his brief refers also to a principle set forth in the case of Bianco v. Town of Darien,157 Conn. 548 (1969), which quoting from Am.Jur.2d said: "Mere laxity in the administration of the law, no matter how long continued, is not and cannot be held to be a denial of the equal protection of the law. To establish arbitrary discrimination inimical to constitutional equality, there must be something more, something which in effect amounts to an intentional violation of the essential principle of practical uniformity," id. pp. 559-560. That is, as the defendant further notes, there must be a pattern of discrimination, consciously practiced, Town ofChaplin v. Balkus, 189 Conn. 445, 448 (1983).
As the first step in the analysis, it must be determined who are the parties who, it is claimed, were similarly situated to the plaintiff as regards the enforcement actions or failures to act of the town official. Focusing on the ordinance enforced against the plaintiff, was there any evidence that others in the community, also in violation of this ordinance, had no enforcement action taken against them? The defendant submitted an affidavit in this regard.
At paragraph 5, he states:
 "5. On or about November 4, 1997, I received a list of properties from the plaintiffs attorney on which sign violations allegedly existed. Upon receiving this list, I took immediate action to address any violations."
In the November 4 letter, some 28 alleged violations were brought to the attention of the defendant. On November 18th, he responded to the letter with a memorandum saying all real estate signs had been removed, "other signs were removed by the day after the election." These "other signs" were apparently "political signs." The memorandum goes on to say CT Page 5547 that he will investigate all the rest of the allegations regarding violations of the sign size regulation — "informing the owners of the property where I find the violations that you noted in your letter (of November 7, 1997)." But the plaintiff could make the observation that there was no need for her to communicate violations to the defendant which he could have observed himself and which may have existed while a cease and desist order was pending against her. Also, it is interesting to note that the November 18th response came five days after the plaintiff filed her appeal from the Zoning Board of Appeal's refusal to overturn the cease and desist order.
Also, there is no indication of what follow up was done, certainly no indication that cease and desist orders were filed against any property owners whose signs might have violated the ordinance. Also, any political signs were removed after the election — that is, at a point when they would serve no useful purpose in any event. At his deposition, the defendant alluded to the fact that apparently it was a "custom" to allow political signs. He also mentioned one lady who had one or two non-complying signs on her property, but the indication is that nothing was done in regards to these signs because the defendant's predecessor had apparently permitted them. All of these actions or failures to act were taking place at or around the time when the plaintiff felt compelled to appeal the Zoning Board of Appeal's refusal to overturn the cease and design order, which was still outstanding against her.
In addressing the issue of disparity of treatment in the enforcement of a local regulation, it is important to keep in mind the purpose of the regulation.
In Knoll v. Steere, 60 Conn. App. 376, 383 (2000), the court described the purposes of an ordinance like the one at issue here:
 "In contrast, § 3.20 makes no attempt to regulate the content of residential signs. The trial court correctly noted that `[t]he government has a significant interest in the regulation of signs in order to maintain the safety of vehicular traffic.' The plaintiff concedes that her sign was designed to attract the attention of passing motorists. In Gileo, the United States Supreme Court pointed out that "[u]nlike oral speech, signs take up space and may obstruct views, distract motorists, displace alternative uses for land, and pose other problems that legitimately call for regulation." Ladue v. Gileo, supra, 512 U.S. 48. We conclude that the enforcement of § 3.20 of the zoning regulations CT Page 5548 did not infringe on the plaintiffs constitutional right to freedom of speech."
Particularly as to "political signs," it is difficult to see how they would be any less distracting than the plaintiffs sign — especially if the motorists happened to be political opponents or their supporters.
But all of this does not necessarily establish another required component of the Schnabel test even if it does alert the court that "mere laxity" of enforcement may not provide a ready explanation for what occurred here. Schnabel also requires an equal protection plaintiff to answer the following question affirmatively — was any selective treatment based upon "impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person,"230 Conn. at p. 762.
The plaintiffs sign protested the deer kill that was about to take place in her community and did so by a drawing depicting two deer and inquiring "Who asked the deer?" People for and against such an issue can have very strong feelings in relation to them. The plaintiff submitted an affidavit in opposition to this motion which by its wording appears to be based on her personal knowledge and observation. She states that:
 "1. On or about July 3, 1997, the defendant stood up at an annual meeting of the Groton Long Point Association and expressed his strong support for the amendment to a Groton Long Point ordinance that would permit the killing of deer with the use of shotguns. He further testified that the deer needed to be eliminated because they presented a health threat to the public. By a narrow margin, the members of the Association voted to approve a deer kill of approximately 10 deer with shotguns and bows and arrows."
Apparently the defendant is a member of the so-called Association of the Groton Long Point community that approved the deer kill, but he is also a zoning officer of that community. At his deposition, he said that he felt the deer in Groton Long Point were "dangerous to people's health because they carry the infection of Lyme Disease." He refused to answer how he voted as a member of the Association regarding the deer kill claiming this would infringe on his right to privacy.
In light of the disparity of treatment of people having signs on their property, the plaintiff claims that the enforcement action taken against CT Page 5549 her was based not on any real concern that the defendant as zoning officer had with ensuring § 3.20 of the community ordinances was enforced so as to accomplish the public purpose behind its enactment. Thus, the fact that there may not be a First Amendment claim because, for example, the plaintiff had other ways of expressing her opposition to the deer hunt, misses the point. The claim is that the purpose was to improperly silence one way the plaintiff had of expressing a view different from that of the defendant. In other words, the enforcement of the ordinance was used as a means to accomplish objectives the defendant thought desirable not because he desired to enforce § 3.20 — how else explain failures to enforce the ordinance against others. That is the plaintiffs argument. It is a close case and perhaps not the strongest selective enforcement case ever to appear, but the court does not feel it would be appropriate to deprive the plaintiff of the right to present her case to a jury.
The motion is denied.
 ___________________ Corradino, J.